UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES B.  SCRUGGS, JR.,

        Plaintiff,

                                      Case Number 06-10222-BC
v.                                       Honorable Thomas L. Ludington

CLARE COUNTY SHERIFF'S DEPUTY
MICHAEL COON,

        Defendant.
_____ /

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DISMISSING FEDERAL CLAIM WITH PREJUDICE, AND DISMISSING REMAINING STATE LAW CLAIMS WITHOUT PREJUDICE

The plaintiff, James B. Scruggs, Jr., initiated this action in January 2006 alleging that the defendant, Clare County, Michigan sheriff's deputy, Michael Coon, violated his constitutional rights by arresting him without probable cause in June 2005 for operating a motor vehicle under the influence of alcohol and later using excessive force while at the jail and in a local hospital after securing a warrant for a blood draw.  The plaintiff also makes claims under state law for false arrest, false imprisonment, malicious prosecution, and assault and battery.

Thereafter, the defendant filed a motion for summary judgment as to all five counts of the plaintiff's complaint.  The defendant maintains that there was ample probable cause to support the arrest of the plaintiff and that any use of force in this case was reasonable because the plaintiff's level of intoxication required restraint for both his and officer safety.  The plaintiff has filed a response in opposition, and the Court heard oral argument on the matter on May 15, 2007.

After considering the parties' submissions and arguments at the hearing, the Court granted the defendant's motion for summary judgment with respect to plaintiff's federal cause of action:

deprivation of his constitutional rights under 42 U.S.C. § 1983, count four of the complaint.  The

plaintiff first claimed that his Fourth Amendment rights were violated because the defendant used

excessive force against him initially at the jail, later in the hospital, and finally after the plaintiff was

returned to the jail.

The Fourth Amendment protects individuals "against unreasonable . . . seizures." U.S. Const.

Am. IV.  At the same time, by it terms, the "[t]he Fourth Amendment protects against only

unreasonable seizures, it is not a guarantee against unreasonable or outrageous official conduct

generally." *Ewolski v. City of Brunswick*, 287 F.3d 492, 505 (6th Cir. 2002).  There is no question

that the plaintiff was seized for purposes of the Fourth Amendment.  The question presented is

whether the defendant's use of force in this case was unreasonable.

As the Sixth Circuit has explained:

[t]he determination of whether force used to effect a seizure was unreasonable
requires careful attention to the facts and circumstances of each particular case,
including the severity of the crime at issue, whether the suspect poses an immediate
threat to the safety of the officers or others, and whether he is actively resisting arrest
or attempting to evade arrest by flight.  The test is objective; it asks whether a
reasonable officer would conclude that the level of force used was appropriate.

*Id.* at 508.

The Court concluded that the use the defendant's use of force in this case was reasonable.

Taking the record evidence in the light most favorable to the plaintiff, as the Court must at this stage

of the litigation, the plaintiff's deposition, taken as a whole, established that he was unable to

consistently recall the events of the day, and that he acknowledged that he was uncooperative, angry,

and disruptive at the jail and later in the hospital where he was taken for a blood draw.  Based on

the plaintiff's level of intoxication, a remarkable BAC of .282, it is indeed understandable that the

plaintiff was unable to recall many events that happened during the course of day.  For example, the

plaintiff asserts that the defendant used excessive force when placing him in a restraint chair upon entry into the jail. However, at his deposition, he testified that he had no recollection of being placed into the restraint chair. *See* Scrugg's dep. at 50. (answering the following question: "Q. How did you wind up in the restrain chair, do you know? A. No. I don't."). The defendant, however, testified that the plaintiff was placed in the restraint chair because he had fallen off a bench where he was initially seated upon entering the jail. In order to avoid further falls, the defendant placed him in the chair.

Although the plaintiff sought in his deposition to maintain that his demeanor was civil throughout his time at the jail and in the hospital and therefore did not warrant the use of force, he testified contradictorily throughout his deposition. For example, he explained that "I was pretty ticked off . . . because [the defendant] arrested me for drunk driving and I was angry about that." *Id.* at 48. The plaintiff also recalled "kicking and screaming [he] w[as] at the jail[.]" *Ibid.* At the hospital, the plaintiff stated that he was "very upset." At times, the plaintiff could not recall whether he resisted officers attempts to bring him to the hospital and to obtain the blood draw:

> Q. How were you thrown on the floor?
> A. That where I was, on the floor, I didn't just lay –
> Q. Were you pushed on the floor, were you sat down on the floor?
> A. I was laid face down on the floor with somebody's foot on my back. I looked up and it was a police uniform.
> Q. Were you struggling with the police at this time?
> A. I don't recall that.
> Q. Were you yelling anything at this point?
> A. Yes.
> . . .
>
> Q. So you're saying that you didn't resist at all going into the hospital.
> A. I'm saying I don't recall, but I'm saying that there's no reason or a man to be throwed on the floor and abused, that's what I am saying.

*Id.* at 54.

Moreover, although the plaintiff repeatedly testifies that he was thrown on the floor of the hospital and a foot was placed in his neck, he is unable to demonstrate that it was the defendant that so restrained him. For example, the plaintiff recounted only that "someone" placed a foot on his neck:

Q.     Did you have to be restrained in order for the blood to be taken?
A.     I was in the care and custody of Deputy Coon. I was took to the hospital, drug, dragged, walked, I don't know. I know I was face down on the floor, so yes, I was restrained. Yes I had *somebody's* foot on my neck. Yes. I was probably mad. And *that's all I know, I can tell you.*

*Ibid.* (emphasis added).

The plaintiff's claim that excessive force was used is based on belief that he was manhandled or treated roughly by officers. He testified as to his belief:

Q.     How were you abused?
A.     I was pushed around, kicked around, throwed down.
. . .
Q.     . . . .Where were you kicked around, pushed around, and thrown down?
A.     Though the whole process. Between the jail, the breathylzer – or the blood tests and back, that span.
Q.     Why don't you tell me when somebody kicked you.
A.     It's just a figure of speech. Just kicked around, you know. But I think someone having their foot on the back of your head, that's excessive. That's not normal.
Q.     So you weren't actually kicked then by anyone?
A.     No, not actually kicked. I just mean kicked around, pushed around, like being manhandled to clarify.
. . .
Q.     Great, did anyone hit you with their hands or fists while you were in the custody of the sheriff's department?
A.     Not that I recall.
Q.     Did anybody outside of that – when you were down on the ground at the hospital, did anybody – were you thrown down to the ground at any point by anyone?
A.     At the hospital.
Q.      I said outside of when you were brought to the hospital. Were you thrown down at any other point to the ground?
A.     At the drunk tank I believe I was throwed down in there. I just don't – I

can't recall.

. . .

Q.      Are there any other incidents of manhandling as you described that you think resulted in your injuries in this case?  Just to make sure we've covered everything?

A.      Just in the restraining chair, the hospital, and that's about all I recall.

Scruggs dep. at 60-63.

Ultimately, although the plaintiff testifies that he was treated roughly and thrown to the ground, he can barely recall his own conduct.  At times, he believes his demeanor was civil.  At other times, he agrees that he was kicking, screaming, yelling, and generally disruptive.  Still at other times, the plaintiff is unable to recollect if he was resisting officers' attempts to restrain him.  Finally, the plaintiff cannot identify the defendant as the one who placed his a foot in his neck or was even present for the events that happened after the plaintiff was returned to the jail following the blood draw at the hospital.

The Court therefore determined that the defendant did not violate the defendant's Fourth Amendment rights by using excessive force.  Although selective portions of the plaintiff's deposition might be read to support his claim, his testimony, taken as a whole, is so rattled with inconsistencies and so vague because of his level of intoxication that no jury could reasonably find in his favor.

The Court is well aware, as earlier noted, that it must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  However, it is well-established that conflicting statements and admissions in a plaintiff's deposition do not establish a genuine issue of fact in light of facts disputed by the moving party.

*See, eg., Kullman v. Owens-Corning Fiberglas Corp.*, 943 F.2d 613, 616 (6th Cir. 1991) (reasoning "[p]laintiff also argues that, before making the above-quoted admissions in his deposition, he had denied realization of any work or asbestos relation to his problems a sufficient number of times to create a jury issue. Having carefully read the entire deposition, however, we believe that it can bear only one construction as a matter of law" that there is no factual dispute for resolution by a jury).

In this case, the Court determined that despite the plaintiff's version of events that he was treated roughly, the plaintiff admitted at his deposition on several occasions that he was angry, kicking, yelling, and screaming. He could not identify the defendant as the individual that harmed; nor could he recall the circumstances under which he was placed in the restraint chair initially at the jail or confirm the defendant was present when the plaintiff was placed in the chair following his return from the hospital. As a result, there is no litigable issue of fact present in the record. Even assuming the existence of a triable issue of fact, the defendant was confronted with a very intoxicated individual that admittedly was angry, yelling, and screaming. The defendant's actions were reasonable in light of clearly established law, and the Court concluded that the defendant therefore would be protected by qualified immunity.

The plaintiff next asserted that the defendant lacked probable cause to arrest him for driving under the influence of alcohol. The Court concluded that there was probable cause to arrest the plaintiff for the commission of a crime.

The Fourth Amendment prohibits arresting an individual without probable cause. *See Beck v. Ohio,* 379 U.S. 89, 91 (1969); *St. John v. Hickey,* 411 F.3d 762, 768 (6th Cir. 2005). For law enforcement officials, probable cause to arrest exists when "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a

prudent man in believing that [the accused] had committed or was committing an offense." *St. John*, 411 F.3d at 768-69.

The Sixth Circuit has explained that "a reviewing court must assess the existence of probable cause from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citations omitted). However, "determining whether probable cause existed, presents a jury question, unless there is only one reasonable determination possible." *Ibid.*

In this case, the Court agreed that there ultimately was a factual dispute as to who was operating the vehicle. The plaintiff maintained and presented record evidence that it was his friend, Christopher Bennett, that drove the pickup truck full of debris on the way to the municipal dump when the brake lines on the vehicle failed and the truck collided with a stop sign. The defendant likewise proffered evidence that a witness observed the plaintiff driving the truck and viewed him shortly after the collision.

However, despite this factual dispute, the Court remained unpersuaded that a genuine issue of material fact requires resolution by a jury. Although not binding on this Court, a neutral magistrate ruled at the plaintiff's preliminary exam that there was probable cause to believe the plaintiff had committed the crime of OUIL. Thus, a neutral fact finder has weighed the competing testimony of the witnesses and found the defendant's testimony to be credible. There is authority for the proposition the Court may take that fact into consideration when assessing probable cause. *Coogan v. City of Wixon*, 820 F.2d 170, 175 (6th Cir. 2001), *overruled on other grounds, Frantz v. Vill. Of Bradford*, 245 F.3d 869 (6th Cir. 2001) (stating "[w]e do not hold that every determination in a preliminary hearing should be given preclusive effect in a subsequent § 1983 action. Some

preliminary hearings are little more than formalities. Also, even when an opportunity for full adversary proceedings is afforded, strategic concerns may counsel against engaging in such an exercise at the early stages of a criminal proceeding. However, where the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action").

More importantly, however, even conceding the possibility of a fact issue, probable cause may be established by citation to a related offense since the inquiry, at the end of the day, is objective in nature. In other words, even when an officer arrests a person for a charge for which there is no probable cause, the existence of probable cause for related offense excuses the lack of probable cause for the charged offense. *Avery v. King*, 110 F.3d 12, 14 (6th Cir. 1997) (citing with approval the Fifth Circuit's rationale in *Gassner v. Garland,* 864 F.2d 394, 398 (5th Cir. 1989), that "[a] police officer need not actually have had the crime for which probable cause existed in mind at the time of the arrest; rather, the question is whether the conduct that served as the basis for the charge for which there was no probable cause could, in the eyes of a similarly situated reasonable officer, also have served as the basis for a charge for which there was probable cause") (internal quotations omitted).

In this case, the plaintiff was extremely intoxicated and in public. At a minimum, there was probable cause based on the plaintiff's own testimony as to his location and level of intoxication to support an arrest for disorderly person under Michigan law. *See* Mich. Comp. Laws § 750.167(e) (stating that "[a] person is a disorderly person if the person is any of the following: . . . (e) A person who is intoxicated in a public place and who is either endangering directly the safety of another

person or of property or is acting in a manner that causes a public disturbance"). The Court therefore concluded that probable cause supported the arrest of the plaintiff and granted the defendant's motion in that respect.

At the conclusion of the hearing, the Court took under advisement the question of whether it should retain jurisdiction over the state law causes of actions, namely false arrest (count one); false imprisonment (count two); assault and battery (count three); and malicious prosecution (count four). These remaining claims arise under Michigan law and are part of this Court's supplemental jurisdiction, since those claims form part of the same controversy as the section 1983 claims. *See* 28 U.S.C. § 1367(a). However, Section 1367 also provides:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). When a plaintiff's federal claims have been dismissed on the merits, the question of whether to retain jurisdiction over the state law claims rests within the Court's discretion. *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002); *Weeks v. Portage County Executive Offices,* 235 F.3d 275, 279 (6th Cir. 2000) (observing that section 1367(c) "permit[s] the district court to decline to exercise supplemental jurisdiction when that court has dismissed all of the claims over which it has original jurisdiction"). As a general rule, the dismissal of claims over which the federal court had original jurisdiction creates a presumption in favor of dismissing without prejudice any state-law claims that accompanied it to federal court. *Blakely*, 276 F.3d at 863.

The Court believes that it is appropriate to decline the exercise of supplemental jurisdiction over the state law claims in light of non-viability of the plaintiff's federal claims. Those claims, therefore, will be dismissed without prejudice.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment [dkt # 14] is **GRANTED**, the plaintiff's federal cause of action, count four of his complaint, is **DISMISSED WITH PREJUDICE**, and the remaining state law claims are **DISMISSED WITHOUT PREJUDICE**.

<div style="text-align:right">

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

</div>

Dated: May 17, 2007

<div style="border:1px solid black; text-align:center">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 17, 2007.

s/Tracy A. Jacobs
TRACY A. JACOBS

</div>